

**FILED**

**December 18, 2015**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 12:02 PM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
# AT CHATTANOOGA

| | | |
|---|---|---|
| **Robert Dennis, Jr.** | ) | **Docket No.: 2015-01-0184** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 43330-2015** |
| **Polymer Components** | ) | |
| **Employer,** | ) | **Judge Audrey A. Headrick** |
| **And** | ) | |
| **Accident Fund** | ) | |
| **Insurance Carrier.** | ) | |
| | ) | |

## EXPEDITED HEARING ORDER
## GRANTING MEDICAL BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the Employee, Robert Dennis, on October 16, 2015. The central legal issue is whether the evidence is sufficient for the Court to determine that Mr. Dennis is likely to prevail at a hearing on the merits. The employer, Polymer Components, disputes that Mr. Dennis sustained an injury arising primarily out of and in the course and scope of his employment. For the reasons set forth below, the Court finds Mr. Dennis is entitled to the requested medical benefits.[1]

### History of Claim

Mr. Dennis is a fifty-one-year-old resident of Polk County, Tennessee. (T.R. 1.) He works at Polymer as a "lixie cutter." (Ex. 1.) The parties stipulated that Mr. Dennis sustained an injury on June 3, 2015, while on the premises of Polymer during a break.

Mr. Dennis testified that he took a break at approximately 9:15 a.m. He stated he stepped outside of the building, which has a set of steps with no handrails. On cross-examination, Mr. Dennis testified he walked across the grass to go to his truck "to vape" because Polymer does not want anyone vaping in the building.[2] He acknowledged that

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

[2] "Vaping" is slang terminology that means to smoke an electronic cigarette.

1

he decided not to take the steps to get to his truck because it is closer to walk through the grass. Mr. Dennis testified he stepped in a hole in the grass and fell. He stated several people were in the smoking area when he fell. Mr. Dennis stated Loren Holden, the plant manager, and Tammy Castleberry, the safety director, were called outside. Two co-workers, "Kelly," the receptionist, and "Rick," the maintenance man, assisted him into an employee's vehicle to go to the emergency room.

Mr. Dennis testified he went to Starr Regional. At Starr Regional, Dr. David Childress diagnosed Mr. Dennis with a right knee sprain, right shoulder sprain, and a chest wall contusion. (Ex. 2.) Dr. Childress instructed Mr. Dennis to use crutches as needed and to follow-up with Occupational Health in the next week "for return to regular duty work." *Id.* He also restricted Mr. Dennis to no prolonged standing or walking. *Id.* Dr. Childress prescribed Ibuprofen and noted that Mr. Dennis was taking Levaquin for lower extremity cellulitis. *Id.* During cross-examination, Mr. Dennis admitted he had prior arthritis problems with his right knee, for which he had sought treatment. Mr. Dennis testified he could not walk the following morning. He stated he spoke with Ms. Castleberry and told her he wanted to see a doctor. Ms. Castleberry authorized him to go to Doctors Express.

On June 4, 2015, Mr. Dennis saw Dr. Victoria Folsom at Doctors Express. (Ex. 3.) In the history Mr. Dennis provided, he stated he "[t]ripped in a hole at work while going to his truck about 9:30 yesterday a.m." *Id.* Mr. Dennis also reported he "landed on a cross tie with impact to the right upper chest wall." *Id.* He complained that he could not bear weight on his right knee, had difficulty raising his right arm above his head, and experienced pain with breathing. *Id.* Dr. Folsom noted Mr. Dennis was taking Levaquin for right leg cellulitis. *Id.* She ordered a right-knee MRI due to "fall, hyperextension, unable to weight bear." *Id.* Dr. Folsom took Mr. Dennis completely off work. *Id.* She also discussed her treatment plan for Mr. Dennis' right knee with Ms. Holden, the plant manager. *Id.* Dr. Folsom diagnosed Mr. Dennis with a right-knee injury, chest wall pain, and shoulder strain. *Id.* After reviewing Mr. Dennis' right-knee MRI report, Dr. Folsom wrote the following on the MRI report: "Torn lateral meniscus, possible medial too. Diagnostic changes of the right knee large amount of fluid. Refer to ortho." *Id.*

On June 5, 2015, Dr. Folsom spoke with Ms. Holden and recommended an orthopedic referral for Mr. Dennis. *Id.* The medical record reflects Ms. Holden indicated she would contact the insurance company to determine the physician to whom referral should be made. *Id.* On the same day, Mr. Dennis returned to Doctors Express for follow-up regarding his MRI, and Dr. Folsom advised him of her diagnosis of a meniscal tear and orthopedic referral.

Mr. Dennis testified Ms. Castleberry subsequently provided him with a panel from which he selected Dr. Chad Smalley. Polymer scheduled an appointment with Dr.

2

Smalley.[3] However, on June 15, 2015, Polymer filed a Notice of Denial. The basis for the denial stated, "[c]laim is under investigation and a compensability decision cannot be made at this time." (Ex. 5.) Mr. Dennis testified Polymer cancelled his appointment with Dr. Smalley.

At the expedited hearing, Mr. Dennis called Ralph Brett, the owner of Polymer, to testify.[4] Mr. Brett stated he was familiar with the concrete steps and walkway that go from the building to the parking lot. He testified that most people use the steps, but some people do not. Mr. Brett acknowledged the steps do not have handrails. He also testified there are no signs posted requiring people to stay off the grass. Mr. Brett stated there is not a company policy about the grass; however, he would like employees to walk on the pavement.

Mr. Dennis requested medical benefits. Specifically, Mr. Dennis requested that Polymer pay for all of the past medical treatment authorized by Polymer. Although Polymer paid for Mr. Dennis' medical treatment at Starr Regional and Doctors Express, outstanding bills exist from his visit at Starr Regional and bills related to diagnostic testing.

Polymer asked the Court to deny Mr. Dennis' request for medical benefits. Specifically, it argued that Mr. Dennis' claim must be denied under *Lollar v. Wal-Mart Stores Inc.*, 767 S.W.2d 143, 144 (Tenn. 1989), which addresses injuries incurred on the employer's premises while going to and from the work place. Polymer specifically argued that Mr. Dennis failed to satisfy the three requirements set forth in *Lollar* to establish liability for an en route injury.[5]

Mr. Dennis filed a Petition for Benefit Determination seeking medical benefits. (T.R. 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice on September 2, 2015. (T.R. 2.) Mr. Dennis filed a Request for Expedited Hearing on October 16, 2015. (T.R. 3.) This Court heard the matter on November 20, 2015.

### Findings of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor

---

[3] The Court takes judicial notice of the fact that Dr. Chad Smalley is an orthopedic surgeon.

[4] Although Mr. Dennis called Lori Woods, his fiancée, to testify, her testimony did not provide any probative value to the Court.

[5] An employee must show that: (1) he used a route required or provided by the employer on the employer's premises; and, (2) the required route exposed the employee to a special hazard; or, (3) "the risks of travel are directly incident to the employment itself." *Id.* at 144.

3

employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park Ass'n*, 725 S.W.2d 935, 937 (Tenn. 1987);[6] *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

In order for an injury to be compensable, it must be accidental. Under the Tennessee Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014). Further, "[a]n injury causes . . . the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(C) (2014).

In the present case, the Court respectfully disagrees with Polymer's contention that *Lollar, supra*, is controlling. In *Lollar*, our Supreme Court held, "that a worker who is on the employer's premises coming to or going from the actual work place is acting in the course of employment." The Court also held, "that if the employer has provided a parking area for its employees, that parking area is part of the employer's premises regardless of whether the lot is also available to customers or to the general public." *Id.*

---

[6] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

4

at 150. The Supreme Court overruled its three-factor test because it was an unworkable rule that resulted in inconsistent decisions in en route injury cases that were factually similar. *Id.* at 149.

In terms of precedent from the Tennessee Supreme Court, Mr. Dennis' case more aptly falls within the line of cases involving injuries sustained by an employee on an employer's premises during a break. The seminal case for injuries sustained by an employee during a break is *Holder v. Wilson Sporting Goods Co.*, 723 S.W.2d 104 (Tenn. 1987). However, the Court is cognizant that *Holder*'s rationale relied in part upon a remedial interpretation of pre-July 1, 2014 statutes. In *Holder*, the Tennessee Supreme Court stated, "[t]he remedial policies of the Workers' Compensation Act would be undermined if too severe a line were drawn controlling the compensability of injuries that occur during the normal course of the work day after employees have arrived for work, have started working, and before they have left for the day." *Id.* at 107.

Likewise, the court in *Wait v. Travelers Indem. Co.*, 240 S.W.3d 220 (Tenn. 2007) quoted the holding cited above in *Holder*. The *Wait* court held it was "reasonable to conclude that the [employer] realized that the plaintiff would take personal breaks during the course of her working day including 'such incidental acts as eating, drinking, *smoking*, seeking toilet facilities, and seeking fresh air, coolness or warmth.'" *Id.* at 226, *citing Carter v. Volunteer Apparel, Inc.*, 833 S.W.2d 492, 495 (Tenn. 1992)(*citing* 1A Arthur Larson, *Workmen's Compensation Law*, §§ 21.10-21.50) (1990)(footnote omitted)(emphasis added).

The 2013 Workers' Compensation Reform Act does not specifically address injuries sustained by employees on scheduled or authorized breaks on an employer's premises. Under the Reform Act, an injury is compensable if it arose primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(13)(A) (2014). Accordingly, the Court finds that, despite the remedial interpretation of pre-July 1, 2014 statutes, the underlying logic used in *Holder* and *Wait* regarding injuries sustained by an employee on an employer's premises while taking a personal break is still relevant to cases falling under the Reform Act. Essentially, the Court in the present case must determine whether Mr. Dennis was "in the course and scope of employment" when he took a routine morning break to go out to his vehicle to "vape" and chose to walk through the grass to the parking lot instead of walking down stairs with no handrails.

Long-standing authority states that "in the course of" employment refers to the time, place and circumstances of an injury. *Hill v. Eagle Bend Mfg., Inc.*, 942 S.W.2d 483, 487 (Tenn. 1997). In *Plotner v. Metal Prep.*, No. W2012-02595-SC-WCM-WC, 2014 LEXIS 677, at *7 (Tenn. Sept. 29, 2014), the Supreme Court stated:

An injury by accident to an employee is in the course of employment if it

5

occurred *while he was performing a duty he was employed to do*; and it is an injury arising out of employment if caused by a hazard incident to such employment. Generally, an injury arises out of and is in the course and scope of employment if it has a rational connection to the work and occurs *while the employee is engaged in the duties of his employment.* (Citing *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991)(emphasis added)).

As discussed above, the Legislature added "in the course and *scope* of employment" to the definition of injury. Tenn. Code Ann. § 50-6-102(13)(A) (2014) (emphasis added.) The Court must determine whether Mr. Dennis sustained his injuries at a time and a place where he was expected to be and when he was doing something incidental or rationally-connected to his work. During the expedited hearing, Mr. Dennis testified he took a morning break at approximately 9:15 a.m. Polymer did not assert that the break was unauthorized or that it did not permit smoking on the premises. Instead, Polymer's sole contention is that Mr. Dennis' injuries are not compensable because he walked through the grass to get to his truck instead of walking down the concrete stairs and sidewalk. However, Ralph Brett, owner of Polymer, testified that, while most people use the steps, some people do not. He acknowledged the concrete steps do not have handrails; that there are no posted signs requiring people to stay off the grass; and, there is no company policy requiring employees stay off the grass. Therefore, the Court finds that Mr. Dennis sustained his injuries while performing an incidental act while in the course and scope of his employment with Polymer.

Additionally, the Workers' Compensation Appeals Board provided direction regarding the requirements an employee with pre-existing conditions must satisfy in order to qualify for medical benefits at an interlocutory hearing:

> In sum, to qualify for medical benefits at an interlocutory hearing, an injured worker who alleges an aggravation of a pre-existing condition must offer evidence that the aggravation arose primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(13)(A) (2014). Moreover, the employee must come forward with sufficient evidence from which the trial court can determine that the employee would likely establish, to a reasonable degree of medical certainty, that the work accident contributed more than fifty percent in causing the aggravation, considering all causes. *See* Tenn. Code Ann. § 50-6-102(13)(B)-(C). Finally, an aggravation or exacerbation need not be permanent for an injured worker to qualify for medical treatment reasonably necessitated by the aggravation.

*Miller v. Lowe's Home Centers, Inc.,* No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *18 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015).

Mr. Dennis acknowledged that he had a pre-existing right-knee condition as reflected in the medical records. However, on June 5, 2015, Dr. Folsom, an authorized physician, diagnosed Mr. Dennis with "acute meniscal tear, medial" after reviewing his right-knee MRI. (Ex. 3.) She also referred Mr. Dennis to an orthopedist. *Id.* Given these facts, the Court finds the evidence is sufficient to determine that Mr. Dennis is likely to prevail at a hearing on the merits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Polymer or its workers' compensation carrier shall, at Mr. Dennis' discretion, either authorize him to see Dr. Chad Smalley or provide him with a panel of orthopedic surgeons compliant with Tennessee Code Annotated section 50-6-204(a)(3) (2014) for evaluation and/or treatment of the injury of June 3, 2015. Mr. Dennis or the providers shall furnish Polymer, or its carrier, bills for the charges incurred for compensable care, and Polymer or its carrier shall timely pay said charges.

2. Upon presentment of bills by Mr. Dennis or his treating providers, Polymer or its carrier shall timely pay the charges for past treatment of Mr. Dennis' work-related injuries by, or upon the prescription of, Starr Regional and Doctors Express.

3. This matter is set for a Scheduling Hearing on January 20, 2015, at 10:30 a.m., EDT.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

7

**ENTERED** this the 18th day of December, 2015.

Audrey Headrick

Judge Audrey A. Headrick
Court of Workers' Compensation Claims

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of**

**Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Affidavit of Mr. Dennis
2. Medical records of Starr Regional
3. Medical records of Doctors Express
4. First Report
5. Documents received by Mr. Dennis from Accident Fund
6. Billing records from Starr Regional

Marked for Identification Purposes Only:
1. Photographs of (the grassy area where Mr. Dennis fell)
2. Google photographs of Polymer

Technical record:[7]
1. Petition for Benefit Determination, July 15, 2015
2. Dispute Certification Notice, September 2, 2015
3. Request for Expedited Hearing, October 16, 2015
4. Notice of Scheduled Hearing, October 27, 2015

---

[7] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 18th day of December, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email/Mail Address |
|------|----------------|------------------|---------|------------|-----------|--------------------|
| Robert Dennis, Jr. | X | | | | X | robertdennis.12864@gmail.com<br>**268 Circle R. Drive**<br>**Benton, TN 37307** |
| Gordon Aulgur, Esq. | | | | | X | **gordon.aulgur@accidentfund.com** |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

11